# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF ESSEX, NOVEMBER TERM 1845,
AT `SALEM.

PRESENT :

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

Amos Brown & others *vs.* Inhabitants of Wenham.

.The *St.* of 1701, entitled " an act to prevent and make void clandestine and illegal purchases of lands from the Indians," rendered void, as the foundation of title, all deeds made by Indians, without the license or approbation of the legislature, after the year 1633.
A deed was made in December 1700, by three Indians, as principals, alleging themselves to be the only surviving heirs of the late sagamore of Agawam, in which deed they granted, sold, assigned, aliened, enfeoffed and confirmed unto the freeholders and in habitants of the town of Wenham, their heirs, successors and assigns forever, the In dian title to all the land within said town, with the privilege of all rivers, streams ponds, fishing and hunting ; and two white men, as sureties, also executed the deed and covenanted with the inhabitants and freeholders of Wenham, who were then possessed of land in said town, in their own proper right, that the said Indians had good right to sell, &c., and that they should warrant and defend, &c. *Held*, that by the true construction of this deed, it was a mere release of any supposed right, equitable claim or interest of the Indians in the lands within the limits of Wenham ; that it presupposed that these lands had been granted by the government to persons who were

then seized under those grants; that it enured by way of release to the town, or to individuals, according to their respective grants under the government; and that it was not competent evidence to prove the seizin of the town, in its corporate capacity, of any specific parcel of land.

WRIT OF ENTRY to recover a small parcel of land in Wenham. The demandants counted on their own seizin, and a disseizin by the tenants. The trial was before *Shaw*, C. J who made the report thereof which follows :

Neither of the parties having proved title under any deed, the cause was put to the jury upon evidence of elder and exclusive possession, which went to a great extent on both sides.

The tenants introduced evidence that they had been in possession of the demanded premises, from time immemorial, for the purpose of obtaining gravel therefrom, for mending their highways, as the exigencies of the town of Wenham required.

The demandants introduced evidence tending to disprove such possession and use by the tenants, and to prove the possession of John Dodge, their ancestor and devisor, before and at the time of his decease in 1825.

The tenants, to prove seizin in themselves, offered in evidence a deed, dated December 19th 1700, purporting to have been given by Samuel Inglish, Joseph Inglish and John Umpee, as principals, and Joseph Foster, sen. of Billerica, and Moses Parker of Chelmsford, as sureties. Samuel and Joseph Inglish and John Umpee described themselves, in the deed, as Indians, the only surviving grandchildren and heirs of Maschanomett, late sagamore of Agawam ; and they for the consideration of three pounds and ten shillings, paid by Capt. Thomas Fiske, and three others, all inhabitants of the town of Wenham — a committee chosen and appointed by the inhabitants of said town to act in their behalf — gave, granted, bargained, sold, assigned, aliened, enfeoffed and confirmed, unto the freeholders and inhabitants of said town, their heirs, successors and assigns, " the Indian title of all that tract or parcel of land, lying within the bounds of said township,"

bounded by the divisional lines of the several adjoining towns, " to have and to hold the said tract of land, with the privilege of all rivers, streams, watercourses, ponds, fishings and hunting," &c. &c. " to the inhabitants of said Wenham, their heirs and successors, and such others, and their heirs and assigns, as have any lands lying within the bounds of said township, forever." And the said Samuel Inglish, Joseph Inglish and John Umpee, as heirs as aforesaid, as principals, and said Foster and Parker, as sureties, jointly and severally covenanted with the inhabitants and freeholders of Wenham, and such others as had lands lying within said Wenham, that said Samuel and Joseph Inglish and said John Umpee were the true and only proper heirs of the said Maschanomett, and were the true and rightful owners of said tract of land, and had in themselves good right, full power and lawful authority to sell, convey and assure the same. And the said Foster and Parker, as sureties, covenanted with the inhabitants and freeholders of said Wenham who were then possessed of the land in said town in their own proper right, and such others as were not inhabitants of said town, but yet had lands lying within the same, that said Samuel and Joseph Inglish and John Umpee, and their heirs, should warrant and defend the same and every part of the above granted and bargained premises to the said freeholders and inhabitants, and proprietors of the lands lying within the bounds or said township of Wenham, against all other Indians whatsoever that should make any claim or challenge to all or any part of said granted and bargained premises : And said Foster and Parker further covenanted that said premises were " free and clear, and clearly acquitted and discharged of all former and other bargains, sales and alienations made by said Maschanomett, or any other Indian or Indians having lawful right or authority," and that the freeholders and inhabitants, and proprietors of the lands lying within the bounds of said Wenham, should hold and enjoy the same, and every part thereof, to them, their heirs and assigns forever, as a good and indefeasible estate of inheritance in fee simple.

42 *

This deed was executed and acknowledged by the said Samuel Inglish, John Umpee, Joseph Foster and Moses Parker, but was not executed by the said Joseph Inglish, and did not appear to have been recorded in the registry of deeds. The words " D. Rex *v.* Parker. Ipswich Court, July 1st 1701," were indorsed on the deed; which tended to prove that it had been used or filed in court. The demandants waived the objection to the want of registration, if, in the opinion of the court, registration now made would make the deed available as proof. But the deed was objected to by the demandants on other grounds, and was rejected.

A verdict was returned for the demandants, to be set aside and a new trial granted, if the deed, in the opinion of the whole court, is competent evidence, pertinent to the issue, and might have been admitted; otherwise, judgment to be entered on the verdict.

This case was argued and decided at a former term.

*Huntington,* for the tenants.

*Ward,* for the demandants.

SHAW, C. J.    The provincial *St.* 13 Wm. 3, (1701,) entitled " an act to prevent and make void clandestine and illegal purchases of lands from the Indians," rendered void, as the foundation of title, all deeds made by Indians, without the license or approbation of the legislature, after the year 1633.    The preamble of that statute recited, that although the government of the late colonies of Massachusetts and Plymouth, by a law passed in said colonies, respectively, many years before, did inhibit and forbid all persons purchasing any lands of the Indians, without the license and approbation of the general court, yet that sundry persons had presumed to violate that law, to the injury of the natives, and to the great disquiet and disturbance of many inhabitants of the province in the peaceable possession of their lands and inheritances lawfully acquired.    " Therefore, for the vacating of such illegal purchases, and preventing the like for the future," it was enacted as follows :    " That all deeds of bargain, sale, lease, release or quitclaim, titles and conveyances

whatsoever, of any lu.ds, tenements or hereditaments within
this province, as well for term of years as forever, had, made,
gotten, procured or obtained, from any Indian or Indians, by
any person or persons whatsoever, at any time or times since
the year of our Lord one thousand six hundred and thirty
three, without the license or approbation of the respective
general courts of the said late colonies, in which such lands,
tenements or hereditaments lay ; and all deeds of bargain
and sale, titles and conveyances whatsoever, of any lands,
tenements or hereditaments within this province, that, since
the establishment of the present government, have been, or
shall hereafter be had, made, obtained, gotten or procured,
from any Indian or Indians, by any person or persons whom-
soever, without the license, approbation and allowance of the
great and general court or assembly of this province, for the
same, shall be deemed and adjudged in the law to be null,
void, and of none effect.    Provided, nevertheless, and it is
notwithstanding hereby enacted and declared, that all such
purchases, releases and titles, heretofore had or obtained from
any Indian or Indians, by any town or person whatsoever, of
any lands or hereditaments which such town or person also
hold or enjoy by virtue of any grant or title made or derived
by or from the general court of either of the colonies afore-
said, and all releases, purchases, conveyances and titles,
which any town or person shall hereafter make, procure or
obtain of any Indian or Indians, for any lands, tenements
or hereditaments granted, or that shall be granted, by the
general court, to such town or person, before such purchase
or title made or obtained from any Indian or Indians, shall
be, and hereby are, excepted out of this act, and be held for
good and valid in the law ; any thing herein contained not-
withstanding."

But, independently of this statute, the whole court are of
opinion that, by the true construction of the deed which the
tenants offered in evidence, it was a mere release of any sup-
posed right, equitable claim or interest of the aboriginals in
the land within the limits of the town of Wenham ; that it

presupposed that those lands had been granted by the government to persons who were then seized under those grants; that it enured, by way of release, to the town or to individuals, respectively, according to their respective grants under the government ; and that it was not competent evidence to prove the seizin of the town in its corporate capacity, and to maintain the issue, on their part, in this action.

*Judgment on the verdict.*